UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


UNITED STATES OF AMERICA,          :

        Plaintiff,

                           :

V.

                           :          Case No. 2:14-Cr-14066 JEM

**ERIC LEON GAUTHIER**,

                           :

        Defendant.

_____/


**DEFENDANT'S SENTENCING MEMORANDUM**


Law Offices of Neil G. Taylor, P.A.
SunTrust Plaza, 11th Floor
201 Alhambra Circle
Coral Gables, Florida  33134
(305) 858-2233 (Telephone)
(305) 285-5124 (Facsimile)
ngt@bellsouth.net

# TABLE OF CONTENTS

|       |                              | Page |
|-------|------------------------------|------|
| I.    | Authority and Purpose........................................... | 2 |
| II.   | Facts........................................................................ | 2 |
|       | A.  Repugnant                |      |
|       | B.  Dispassionate Analysis   |      |
|       | C.  Commission's Perspective |      |
| III.  | Mitigation................................................................ | 4 |
| IV.   | Guidelines............................................................... | 5 |
|       | A.  Applicability             |      |
|       | B.  Disputed Information      |      |
|       | C.  Sentencing Factors        |      |
| V.    | Conclusion............................................................. | 11 |

I

## AUTHORITY AND PURPOSE

The Defendant, by and through undersigned counsel and pursuant to **Rule 32(i)(4)(A)(I)** of the **Federal Rules of Criminal Procedure**, hereby submits the following Sentencing Memorandum, which is designed to assist the Court in arriving at an equitable disposition of the instant matter. The Defendant's objective is threefold:

1. To secure a dispassionate factual analysis;

2. To highlight significant mitigating factors; and

3. To establish an accurate Guideline calculation.

II

## FACTS

The objective facts establish that the Defendant, in his role as the stepfather to his teenage daughter (15), embraced and facilitated her intimate behavior with her minor boyfriend (15). To that end, the Defendant surreptitiously employed video cameras to capture their trysts, played the videos for his prurient gratification, and engaged in sexual intimacy with his stepdaughter on at least three occasions.

**Repugnant:**

There is no dispute that the circumstances underlying the wrongdoing are offensive. Quite simply, that is the predicate for the statute's imposition of a mandatory minimum sentence of 15 years.

**Dispassionate Analysis:**

If not the Court, who will engage in an unemotional analysis of the facts to

2

support an equitable disposition rather than the imposition of a vindictive sanction?  Not the probation officer (whose conclusion that the video portrayed "sadistic or masochistic conduct…" was disputed by even the Government[1]); Not the Defendant's family (who, understandably, is now overtly hostile); Not law enforcement, and surely not the United States Attorneys Office (whose resentment of Defendant knows no bounds).

**Commission's Perspective:**

As the Court, no doubt, appreciates, when the Sentencing Commission undertook preparation for the offense level ultimately assigned to the statute (**18 USC §2251**), among other things, the Commission, with Congressional approval, considered the reprehensibility of the conduct comprising the offense.  With that in mind, the Commission assigned a Base Offense Level that it felt, all things considered, objectively represented an appropriate sanction, not the least of which was the mandatory minimum.

**Judicial Temperament:**

Perhaps the most elusive and coveted of the three criteria (in addition to intelligence and knowledge of the law) that ensures a qualified jurist is temperament, i.e., the ability to remain dispassionate, to reach results based on objective considerations; often a Herculean, if not impossible, task given authority to pronounce sentence.  But, unlike the Government or the Defense, who speak through advocates, the Court is consistently challenged to bring to the table its discipline of thought, wisdom, and maturity.

---

[1] See Government's Response to Defendant's Objections to Pre-Sentence Investigation Report, Document 62, September 17, 2015, ¶s nine (9) and ten (10).

## III

## MITIGATION

Despite the offensive nature of the case, the Defendant sought to immediately mitigate his conduct.  In that respect, the Defendant accomplished the following:

1.  He submitted to – and passed – a polygraph examination performed by the Government (Exhibit **1**) wherein he was asked and replied in the negative, whether he had ever before engaged in sexual conduct with a minor other than his stepdaughter;

2.  He declined to demand a speedy trial and abandoned any attempt to capitalize on the sense of initial loyalty imbued in his wife and stepdaughter, which took considerable time to evaporate.  By doing so, he not only spared the family the trauma of testifying, he truncated the likelihood the Government would be unable to go forward with a willing victim.  Although the boyfriend remained available to testify, his testimony was subject to severe impeachment without the stepdaughter;

3.  He voluntarily, and promptly, on no less than four occasions, relinquished his interest and conveyed to his family any property in his name and/or jointly held, including realty, bank accounts, and chattels (Exhibit **2**);

4.  He pled guilty and avoided the time, money, and effort inherent in a trial.

On countless occasions, in the Southern District of Florida and elsewhere, such factors have been cited by the prosecution and the courts to justify a sentence at the low end of the Guidelines.

## IV

## GUIDELINES

**Applicability**

As pivotal as the Guidelines were - and important as they remain - as a result of the *Booker*, *Gall*, and *Rita* decisions[2], the Sentencing Guidelines are now but one among several equally important factors that the Court must consider in fashioning a sentence that, as stated in the Introductory Comments to Chapter Five of the Sentencing Guidelines ("Determining the Sentence"), is "...**sufficient but not greater than necessary**..." to achieve the objectives designated in 18 USC §3553 (emphasis added).

In the instant case, the United States Probation Office concluded that Mr. Gauthier's Total Offense Level is **43** (with a Criminal History Category of **I**), thereby making his Guideline Imprisonment Range life (**360** months).

**Disputed Information**

On August 21, 2015, the Defendant submitted to United States Probation Officer Shannon Culberson his objections to the Pre-sentence Investigation Report (Exhibit **3**), which challenged both factual and legal conclusions contained therein. While the Addendum failed to address yet, alone, resolve any objections other than a few minor factual details, for purposes of this Memorandum, only the most salient points[3] will be discussed.

---

2  543 U.S. 220 (2005), 552 U.S. 38 (2007), and 551 U.S. 338 (2007), respectively.

3  Pursuant to **18** USC **§3661**, "No limitation shall be placed on the information...[the] court...may ***receive and consider*** for the purpose of imposing an appropriate sentence" (emphasis added).

**Factual Disputes**

In the Southern District of Florida, the Government's practice is to file a "Factual Proffer" to accompany a Plea Agreement, as was done in the instant case. Therein, in the opening paragraph – a document exclusively authored by the Government – it specifically states as follows:

> ...ERIC LEON GAUTHIER, together with his counsel ...
> stipulates ... the following recitation of the facts shall
> constitute the underlying factual basis for the entry of a plea
> of guilty to the Indictment ...

The parties agreed to those facts.  Further, that agreement conformed to the identical dispute raised by the Defendant in his August 21, 2015 letter of Objections to the PIR (Exhibit **3**), especially as it related to factual representations made by J.S.  The agreed facts are bad enough and, for purposes of striking a Plea Agreement, the Government was willing to abandon the statements attributed to the stepdaughter's then boyfriend.  While the Defense does not feel the statements attributed to J.S. will make a difference in the Court's disposition, the agreed facts should equitably preclude the Government from adding to, disputing, or otherwise seeking to embellish them.

**Legal Disputes**

There is one legal dispute advanced by the Defense, the eight (**8**) point enhancement (four for each victim) added by USPO Culberson's conclusion that the "...offense involved material that portrays sadistic or masochistic conduct or other depictions of violence."  The case law simply does not support such a conclusion.

A meticulous consideration of similar circumstances may be found in two opinions by United States District Court Judge John A. Woodcock, of the District of Maine.

6

Despite imposing four level enhancements for acts Judge Woodcock agreed were "sadistic or masochistic conduct or other depictions of violence", he correctly noted that what constitutes such conduct is <u>not</u> specified in the Guidelines. *See United States v. Cameron*, 2011 U.S. Dist. LEXIS 24878 ("*Cameron I*")); *United States v. Cameron*, 2014 U.S. Dist. LEXIS 148418, 25 ("*Cameron II*").

A child pornography case, Cameron initially came before Judge Woodcock for sentencing, following a bench trial. Quoting from *United States v. Hoey*, 508 F.3d 687, 691 (1st Cir. 2007), Judge Woodcock noted, "The First Circuit 'agree[s] with the many circuits which have found that images depicting the sexual penetration of **young and prepubescent** children by adult males represent conduct sufficiently likely to involve pain such as to support a finding that it is inherently "sadistic" or similarly "violent" under the terms of'" the Guidelines (emphasis added). *Cameron II*, 26.

Characterizing a Total Offense Level of 39 as "extraordinarily punitive" (*Cameron one*, at 9-10), especially for a first time offender, Judge Woodcock noted that the First Circuit, in an earlier child pornography case, added a "postscript" wherein it stated: "The sentencing guidelines at issue are, in our judgment harsher than necessary" and are "…usually reserved for crimes of violence…" *Id.* at 14. The District Court then engaged in a review of other circuit court cases which, likewise, concluded that the guidelines for child pornography cases were too harsh. *Id.* at 14-15. Finally, the court concluded its analysis by focusing, specifically, on what is considered "sado-masochistic conduct" and noted that such conduct applies to "prepubescent children", i.e., under the age of 12. *Id.* at 22-23.

7

On appeal, in *United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012), the First Circuit reversed Judge Woodcock's initial sentence and remanded for, among other reasons, reconsideration of the four level enhancements attributable to sadistic depictions. Addressing enhancement for Sadistic or Masochistic Depictions, the District Court, once again, engaged in a detailed discussion that limited the consideration to young (under the age of 12) and prepubescent children. *Cameron II*, 25 – 28.

While the Defense is neither qualified nor foolish enough to suggest to the Court at what age minors are capable of engaging in sexual activity without psychological or physical harm, it is undisputed that here, **on their own**, these two teenagers willingly engaged in sexual activity. That is decidedly not the prepubescent or child under the age of 12 Judge Woodcock had in mind when he considered the four-point enhancement applied by the probation officer in this case.

**Sentencing Factors**

Along with the Guidelines, the Court must now consider the factors set out in **18USC §3553** as noted, *supra*.

### Nature and Circumstances of the Offense

An offense that can only be described as repulsive, Mr. Gauthier acknowledged he will rightfully be imprisoned for his conduct; of this, there is no dispute.

### History and Characteristics of Mr. Gauthier

Mr. Gauthier's history and characteristics are well presented in paragraphs **72** through **96** of the Addendum to the Pre-sentence Investigation Report. A master upholsterer, he has always worked at a lawful occupation to support himself and his

family.

## Seriousness/Respect/Punishment

There is nothing about a federal prosecution that does not drive home to the community, very pointedly, the seriousness of the offense.  Mr. Gauthier will be going to prison for, at a <u>minimum</u>, **15** years; no more need be said about the seriousness of the crime, the punishment, and the respect for law.

## Adequate Deterrence

Quite frankly, there is nothing about a **30-year** sentence that will more effectively deter this kind of crime than the **15**-year mandatory minimum the statute provides.  To be clear, the message disseminated is simply that, for this type of crime, there are no alternatives but lengthy incarceration.

## Public Protection

Should the Court see fit to sentence Mr. Gauthier to the mandatory minimum, the public will be protected for substantially more than a decade.  That should be sufficient for Mr. Gauthier, who passed a polygraph denying he had ever previously engaged in sexual conduct with any other minor, especially since his release will be followed by a plethora of conditions designed to monitor him and preclude repetitious behavior.  Additionally, Mr. Gauthier is **54** years old.  Upon release from incarceration following a sentence of 15 years – assuming he survives[4] – he will be more than **67**

---

[4] "Mortality rates rose dramatically with age.  The death rate of inmates age 55 and older (1973 per 100,000) was over 3 times higher than that of inmates age 45-54 (566 per 100,000), and 11 times higher than those age 35-44 (177 per 100,000). Inmates age 45 or older comprised 14% of state prisoners from 2001 to 2004, but accounted for 67% of all inmate deaths over the same period." Christopher J. Mumola, Medical Causes of Death in State Prisons, 2001-2004, U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Data Brief, January 2007, NCJ216340.

years old and unlikely to pose a threat to anyone.

It should further be noted that Mr. Gauthier was previously evaluated by prominent psychologist, Dr. Edward Sczechowicz (Exhibit **4**), who concluded that his risk of recidivism was less than **2.3%** (Exhibit **5**).  Dr. Sczechowicz ran the Mentally Disordered Sexual Offender Treatment Program for Miami-Dade County for more than 25 years and continues to be utilized, predominantly by the prosecution, in criminal cases brought by the Miami-Dade County State Attorneys Office.

### Training/Treatment

Given Mr. Gauthier's talent as a master upholsterer, training is unnecessary but treatment, on the other hand, may very well be warranted and beneficial.

### Sentences Available

The offense carries a 15-year mandatory minimum sentence.  Further, should the Court accept the Guidelines calculation submitted by the Defense and reduce the Base Offense level eight (**8**) points, the low-end sentence (14 years/168 months) would fall short of the mandatory minimum by approximately 12 months; the high-end sentence (17.5 years/210 months) would exceed the mandatory minimum by 30 months (2.5 years).

### Sentencing Disparity

In the last several years, the Sentencing Guidelines for pornographic offenses have come under considerable scrutiny.  From the imposition of irrelevant post-conviction conditions (*see United States v. Fern*andez, 776 F.3d 344 (5th Cir. 2015)), to a ground swell of judicial rejection of perceived draconian sanctions (*see United States*

*v. Price*, 775 F.3d 828 (7th Cir. 2014), the courts have begun to depart downward from what many judges believe are disproportionate and unnecessarily harsh sentencing parameters (*see A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 Fed. Sent. R. 108 (2011); U.S. Sentencing Comm'n, *Federal Child Pornography Offenses*, at 2, n. 15; n. 71; App. G at G-4 (2012).

## V

## CONCLUSION

Mr. Gauthier has engaged in repulsive conduct, for which he is prepared to account. He has not attempted to provide any excuse or justification. Quite the contrary, he is ashamed at what he did; mortified. He also regrets the destruction of his family and the pain his conduct has imposed upon all of them, most of all his stepdaughter.

But, given his post-arrest conduct, it is his considered hope that the Court will find the strength to dispassionately evaluate the facts and impose an equitable sanction.

Accordingly, the Defense believes that a sentence of no more than the statutory mandatory minimum (**15 years**) would be "***...sufficient but not greater than necessary...***" to achieve the objectives designated in **18 USC §3553**.

Respectfully submitted,

Law Offices of Neil G. Taylor, P.A.
SunTrust Plaza, 11th Floor
201 Alhambra Circle
Coral Gables, Florida 33134

By: /s/ Neil G. Taylor
      Neil G. Taylor, Esq.

11

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was electronically filed, by CM/ECF, this 16th day of December, 2015.

By: _/s/ Neil G. Taylor_____
Neil G. Taylor, Esq.